All right, I think we're ready to go Mr. Byrne. Good morning, your honors. May it please the court. My name is Jonathan Byrne. I'm appearing this morning on behalf of Tony Daugherty, the petitioner below. The Old English Commonwealth expected jurors to be familiar with the parties that were appearing before them and to bring to bear their knowledge of those parties in resolving the dispute. But the founders went a different way and enshrined in the Sixth Amendment a right to an impartial jury trial for criminal defendants. As Chief Justice Marshall explained in discussing Aaron Burr's trial, the great value of trial by jury certainly consists in fairness and impartiality. And those who most prize it do so, quote, because it furnishes a tribunal which may be expected to be uninfluenced by an undue bias of the mind. Mr. Daugherty was denied his right to an impartial tribunal because a juror lied to his fellow jurors about knowing Mr. Daugherty and his family and expressed a fear which he said his fellow jurors should share about what might happen if Mr. Daugherty were acquitted. This court should reverse the district courts. The fear that if he were acquitted, that Mr. Daugherty would be free to roam and inflict horror or inflict injury upon the individual members of the jury? Well, we don't know. And that's one of the things that is, I think, particularly insidious about Jerry McBride's statements in this case is that it essentially leaves open to the imagination what the negative consequences might be. Which would allow other jurors to maybe go to the worst possible scenario in their own minds, whether that is something that would happen to them or to their families or something like that. We just don't know. Well, one of the things we do know is that this comes to us on a 2254. And so, EDPA applies. And this court, we have gotten into an awful lot of trouble in declining to apply EDPA. And as the Supreme Court thinks it's written, and we've been the subject of summary reversals, and it seems to me that we ought to take some hints from the Supreme Court. We have to establish whether West Virginia state courts unreasonably apply clearly established federal law. You admit that's a high burden, don't you, Mr. Byrne? Absolutely, Your Honor. Yes. But I think the lessons from the Supreme Court cases that you are talking about cannot be that a petitioner can never prevail in a 2254 proceeding. And I think in this situation, the high bars are met because there is an application of federal law here to facts. It's an unreasonable determination of the facts because the lower courts have insisted on treating Mr. McBride's statements as two sort of hermetically sealed things. Mr. McBride said, I know Mr. Daugherty and his family. And he said, I'm afraid of what might happen if we acquit him. What's wrong with the state courts not going into a jury verdict and trying to protect the privacy and sanctity of the jury room? It seems to me that we want people to serve on a jury. And it's perfectly permissible for the state courts to say we're going to impose some limits in delving into jury deliberations because this is going to discourage people from serving. And that's something that federal law has indicated respect for. And why should we chastise the state courts for protecting that very value? Because there's a competing value, which is enshrined in the Sixth Amendment, which is a right to an impartial jury. Exactly. And that's why we, when you say it's a competing value, isn't it up to the state courts to resolve the balance? With the caveat that they don't contradict established federal law. Well, how could they contradict established federal law? Because they thought that McBride's statement was internal and that it was simply he was relaying his own mental impression. And the state court said, well, that's internal. That strikes me as something of a judgment call, but a perfectly reasonable judgment. And I'm just not sure what clearly established federal law would say that jurors relating to what his own mental impressions are, that that was some kind of external intrusion into the jury process. It's simply one juror saying, this is what I think, this is what it is. That can't be a violation of clearly established federal law for the West Virginia courts to say that that's relaying a mental impression of a juror is somehow external. It's perfectly legitimate to call that internal, isn't it? Your Honor, that's not all Juror McBride said. If all he had said was, hey, based on what we've seen in this case, I'm really afraid of what might happen if we acquit this guy. That's one thing. But what he also said, and it's important to commend, this is false. He falsely told his fellow jurors, I know this man. I know his family. That implies he has outside knowledge, information beyond what was presented in court at trial, that informs this fear of what might happen if Mr. Daugherty was acquitted. Let me ask it this way. Did you look at the voir dire of the jury to start with as to whether or not there were any questions about did he know anybody or know anything about the facts of the case? I mean, I don't know whether that's going to translate to any external thing, but did he do anything like that? There was only an indication in voir dire that Juror McBride knew one of the potential witnesses, but it was not a witness who wound up testifying. There was no indication. He did not make any indication that he might have known anybody else that was involved. So my question is, how did he lie to the court in the voir dire? Did he lie to the court in the voir dire? I don't think he did in voir dire. He lied to his fellow jurors. When they had the post-trial hearing on the motion for a new trial, he testified that he did not know Mr. Daugherty or his family, and Mr. Daugherty testified he did not know Juror McBride. But we have multiple jurors and other jurors, and their statements really have never been found to be false, who said that Mr. McBride did say, I know Mr. Daugherty. And so his own testimony undermines that and really raises the question of why he would do something like that in an attempt to influence the jury's decision. And I think it's also important, in looking at this case, to take in the full context of it. This was not a particularly strong case from the government's or from the state's standpoint. There were 16 charges originally. Four of them were dismissed before trial. Eight of them resulted in acquittals, and the four charges on which Mr. Daugherty was convicted don't make any sense in light of the acquittals. Counsel, doesn't the acquittals show that the jury was not influenced and they did their job? If you had this strong external influence, as you're suggesting, why didn't we have 12 guilty verdicts? Instead, you only got four. It's my experience that jurors take their work pretty seriously, and when you have a divided vote like that, that suggests to me that they did what they were supposed to do, which is to apply the evidence to the law, and they were not swayed by anything this guy would say. I would disagree with that reading of this particular verdict, Your Honor, and here's why. As I said, there were 16 original counts, and basically there were four counts each for four particular instances. And the 12 counts that went to trial, there were a group of sexual assault charges, a group of sexual abuse charges, and then the sexual assault by a guardian. Mr. Daugherty was convicted of sexual assault by a guardian, but he was acquitted of sexual assault. So the jury's verdict does not make any sense. Now, that in and of itself is not a basis to vacate it. Aren't we told by the Powell case that we're not to sort of, you know, deal with, look at a jury verdict and deal with, well, this count is inconsistent with this count, that we're not to mix and match counts against one another, that the way we are to look at a jury verdict is to take each count and ask whether substantial evidence supports it, rather than saying, well, count 12 is inconsistent with the verdict on count 6, and count 7 is inconsistent with the verdict on count 8, and everything. The Supreme Court said, no, we don't look at jury verdicts that way. We look to see whether each count is supported by a substantial amount of evidence. And I think Judge Novak makes a very good point, the fact that you cite the number of acquittals as evidence of a close case, but Judge Novak makes the point that it could be equally taken as evidence of a very conscientious jury. They went through it count by count and came to a conscientious conclusion. And you say it's a particularly weak case. No, I'm not sure. TJ, who is the victim here, had a good deal of extensive testimony, and it was made to a number of doctors, and it was made over a period of years, and he gradually opened up about what's happened to him. And there were physical findings about the doctors were dealing with physical findings that talked about venous congestion, which was suggested, or sexual abuse. Do you really think this is a close case? I think it was, Your Honor, because the state's experts who testified about TJ's medical history and everything admitted they could not say this proves he was sexually assaulted. It had, at best, indications that might be consistent with sexual assault. Mr. Daugherty had an expert testify inconsistently to that. TJ admitted he made things up. He made up allegations against an entirely separate person. Let me ask you this, Mr. Byrne. With respect to both TJ and the doctors, do you feel like you had a fair opportunity to cross-examine? I think the trial counsel did. I think the trial counsel did a fairly good job at trial. He unfortunately continued way too long with the case and created problems elsewhere. But I also think, I've been doing this, certainly not as long as you have, Your Honor, but I've been doing this for a while, and this was not a case where the only defense case was cross-examination of the state's experts. There was a defense case, and it included Mr. Daugherty taking the stand, saying, I didn't do this, and then being subjected to absolutely no meaningful cross-examination. It is the wildest thing I have seen in years. And none of that— All I wanted to say was that TJ and the doctors were subject to cross-examination, and that wasn't unreasonably curtailed, was it? They were. They were subject to cross-examination. The perhaps biggest problem with the record in this case is that when it went to the West Virginia Supreme Court of Appeals, the record was not complete. And trial counsel, who then became appellate counsel, failed on that level to present the entire case to the court. So when the West Virginia State Supreme Court made its ruling on this issue, partly that anything that Jerome McBride said wouldn't have been prejudicial, it was based on a record that did not include even all of the state's case, much less any of the defense case. It actually ended with TJ's testimony. And so I see my time is about ready to end here. If there are not any other questions, I will save my time for rebuttal. Judge Floyd, do you have some questions? No, sir. Judge Novak, do you have any questions? I'm fine, thank you, sir. All right, let's hear from Ms. Wilson. We'd be happy to hear your side of it. May it please the Court. Petitioner's case hinges on meeting AEDPA's formidable barrier twice. AEDPA sets up a high bar, one that authorizes federal intrusion only if state courts' decisions were unreasonable. And Petitioner can't clear this double hurdle. First, he can't show that the state court's decision to treat the statement separately was an unreasonable determination of the facts. And second, even if Petitioner could make that show, he still can't show that taken together, it would be unreasonable to find that the statements were internal. In 2006, the Supreme Court had never provided a formula for this determination, and it certainly had not said that a juror's implication of outside information, if there even was one here, was external. And given that backdrop, considering the statements to be internal would be entirely reasonable. The state asks that this Court affirm. First, I'll begin with it was reasonable for the state court to treat the statements disjunctively. And we have to begin with the first principle that state court findings are presumptively correct. How a statement was made, and thus how to treat it, that's a factual finding. And under AEDPA, if reasonable minds could disagree on the facts, the state court's findings have to stand. Here, reasonable minds could disagree. We had various testimonies from various jurors on what they heard and how they heard it, and so under the AEDPA standards, treating these statements separately was entirely appropriate and reasonable. And Petitioner seems to agree that this Court could just stop there, because he has never asserted that if the statements are treated disjunctively, that he wins. In fact, I just heard Mr. Burns say that, yes, a fair statement standing alone would be internal, and that this case would be different if these statements were treated disjunctively. So really, he has to clear AEDPA two times. He has to show that, first, these statements have to be taken together, and then he has to show that it would be unreasonable to conclude that together those should be treated as external. So I'll move to the key issue in the case, which is whether it would be unreasonable to conclude that taken together these statements were internal. And the answer is yes. Again, we start with AEDPA. The analysis has to stay rooted in AEDPA, and under AEDPA, and this is quite an old case, we have to look back at the law as it was in 2006. And also AEDPA sets up a very, very difficult standard, and it was meant to be that way. This goes beyond clear error, and it's not enough for this court to disagree with the outcome. If reasonable jurists could disagree, habeas relief is foreclosed. And critically, the Supreme Court has actually helped us out on these questions of whether there was an unreasonable application of Supreme Court law. In Wright v. Van Patten, the Supreme Court said, where Supreme Court cases give no clear answer to the question presented, it cannot be said that state courts unreasonably applied clearly established federal law. Here, there was no clear answer on this question, so relief is unavailable. In 2006, we had four data points, just four cases, really. We had Remmer, Turner, Parker, and Tanner. And none of them really fit this situation here. So none dealt with the juror's implication of external information that might have led other jurors to maybe fill in the blanks about maybe something this guy did in the past. Remmer held that a third party's attempt to bribe a juror was external. Turner held that sheriff's deputies that were witnesses in the trial that were also embedded with a sequestered jury, that that was external. And Parker held that a bailiff's statement to jurors that the defendant was wicked and guilty was external. And Tanner just said that juror intoxication, hey, that's internal. So none of these cases really deal with statements by jurors to other jurors, statements that don't really deal with the facts of the case, statements that might mean something by implication. And so really this court need only look to the state of affairs in 2006 and see that this really just wasn't clear, which means that even if we take these statements together, it would have been completely reasonable to say that this was internal. And that simply ends the case. Well, it would be reasonable to say that today, would it not? Well, Your Honor, of course, we have to analyze this case under the standard of 2006, but really I would agree with you, Judge Wilkinson, on that, because since 2006 the Supreme Court has really only decided two other cases that don't help us out very much or help the court out very much and give us more information. Those cases are Warder and Pena-Rodriguez. Pena-Rodriguez says that racial bias can be external. Right, but this is not a question of racial bias or anything. It always has seemed to me that the line between internal and external statements has been a hazy one. And that, you know, unless there was some sort of racial prejudice involved, that what it really poses is simply a judgment call for not only state courts, but for us. And it's hard to find a state court's decision to be really unreasonable application of fairly established federal law when the whole question is right on the borderline between internal and external, when something is so clearly a judgment call on the part of the court. It's hard to say that there's a clearly established federal law that's been violated. And do you think this was a—Mr. Burns says, I'm just curious if this was a close case because of the various acquittals and the fact that the prosecution was only able to get guilty verdicts on four of the cases. I'm just curious because there's also the question of whether, even if that was an error, whether it had an injurious effect on the jury verdict. Is this, in your mind, a close case? Your Honor, this was not a close case. The state's been on an extremely strong case. I think there are four points, really, to the state's case that drive this home. First, we heard from the victim. T.J. gave testimony and he said, my dad anally raped me on four cases. And that's compelling. Beyond just his own testimony, the evidence established that his disclosures were consistent and persistent and his core of his disclosure never changed. And everyone agreed on that. Even the defense witnesses agreed on that. There was physical evidence that the report from Dr. Wallace, after T.J. was examined, that was quote, unquote, highly suggestive of sexual abuse. And the state's experts both said that T.J.'s pretty extreme trauma response is consistent with a child who had been sexually abused. And these were not very palatable things that happened to T.J. This boy was having extreme mental distress, defecating on himself, smearing feces, eating feces. He even actually attempted suicide. So this was real trauma that had happened to this child. And the defense didn't really do a whole lot to undercut the state's case. The two experts that they had, Dr. Wyatt was the principal expert. Dr. Wyatt admitted that much of his, well, let's back up. The defense's theory was essentially to just gaslight the victim and say that he had been talked into believing that he had been sexually abused by his father because he had just simply had so much therapy. And Dr. Wyatt admitted that he was speculating that this was the case because he didn't know what was there. But to wrap it up, it was a perfectly fair trial just in terms of the opportunities for cross-examination and the opportunity for the defense to put on its case. I mean, overall, it was a fair trial. Absolutely. And the split verdict, to get back probably to the initial question, Your Honor, is, as Judge Novak pointed out, indication that this was a thoughtful and deliberate jury that went count by count. This was not a runaway jury overrun by groupthink or fear. A split verdict, inconsistent, putting aside whether it's inconsistent or not, this shows that the jury went count by count and made an individual thoughtful determination. Ms. Wilson, I'm going to appreciate your presentation. I'm going to ask at this point Judge Floyd and Judge Novak if they have further questions of you. Judge Floyd? No, sir. I don't. Judge Novak? All good. Thank you, sir. All right. We thank you very much, Ms. Wilson. We appreciate your presentation a great deal. Mr. Byrne, you have some rebuttal time. Please proceed. Your Honor, thank you. I agree, ultimately, that the question is whether these statements Jury McBride made were external or not. Just the question of whether it comes from inside the jury room or not is not the deciding factor. It's hard to understand how someone saying in the middle of jury deliberations, I have information that wasn't presented at trial and we should not acquit this guy because of it can be internal. That is just a different beast from someone saying, gee, remember the victim testified? Wow, we can't let this guy go. It's just not the same thing. And so I would say that. Also, getting back to the jury consistency, that has never been raised as an individual issue and I'm not here arguing that because he was acquitted on eight counts that this court should nullify the other four. But if that's what the state thinks a strong case looks like, I'd hate to see a weak one. I think the point is it shows the thoughtfulness of the jurors. If they just wanted to get this over with and convict him because of the taint from that juror, they would have just done a runaway jury as Ms. Wilson suggested. Gone in, found him guilty, got it done. But you have really long and late deliberations in this case in addition to the split verdict, which again points to a conscientious jury doing what their sworn duty is and taking it seriously and somebody that's not under the influence of an external, as you would describe it, impact. It was during that long night of deliberation that Juror McBride made these statements. And it's probably a viewpoint informed by my years as a public defender, but I see all the acquittals lined up against those four inconsistent convictions and say, well, maybe that is the result of them. One juror who was allowed to testify to it, the others weren't, but one juror said, yeah, what Juror McBride said impacted me. The final thing I would leave the court with is this question of reading these two statements together. The analogy that kind of came to my head while I was preparing for oral argument is the way it works with opinion in defamation law. If I write a column or a substack post or something that says Governor Smith is a crook and I lay out a bunch of reasons that are all in the public record, that's an opinion, that's my opinion of Governor Smith. If I say, I grew up with Governor Smith, I went to school with Governor Smith, I've done business with Governor Smith, Governor Smith is a crook, that implies I know something beyond what the public does. That is a statement of fact. It's not just a statement of opinion. And I think you have to take these two statements and read them together for the court really to appreciate their impact. But I've made that point. And unless there are any further questions, I'm willing to rest on my briefs. Judge Fullett. Yes, sir. Judge Novak. Thank you. Thank you, counsel. All right. Mr. Byrne, you always enjoy having you before us and you've done a fine job and we really appreciate the conscientious manner in which you've presented your case. Ms. Wilson, we want to thank you as well. If everybody was here in person, we'd come down and shake your hands. But the fact that we're operating remotely doesn't diminish our appreciation for each of your presentations in the slightest. So you take care and this court will take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Henry F. Floyd, David J. Novak